IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. _____

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JOHN "MARTY" SHAHEEN and )<br>RANDALL SHAHEEN, )<br>)<br>Defendants. ) | **VERIFIED COMPLAINT AND<br>MOTION FOR A PRELIMINARY<br>INJUNCTION** |

Plaintiff, for its Verified Complaint and Motion for a Preliminary Injunction against Defendants, alleges and says as follows:

## THE PARTIES

1. Plaintiff, Meineke Car Care Centers, Inc. ("Meineke"), is a corporation organized and existing under the laws of the State of North Carolina, with its offices and principal place of business located at 128 South Tryon Street, Suite 900, Charlotte, Mecklenburg County, North Carolina.

2. Upon information and belief, Defendant John Marty Shaheen and Defendant Randall Shaheen are citizens and residents of the State of Georgia.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1331, in that this is an action arising under the laws of the United States.

4. This Court also has jurisdiction over the subject matter of this action under and by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), in that this is an action arising under an Act of Congress relating to trademarks.

5. This Court also has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1338(b) in that this action presents one or more claims of unfair competition that are joined with one or more substantial and related claims under the trademark laws.

6. This Court has diversity jurisdiction over this action under and by virtue of 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. This Court also has supplemental jurisdiction over the subject matter of the First and Third Claims for Relief asserted in this Verified Complaint under and by virtue of 28 U.S.C. § 1367 and the case law decided thereunder.

8. Venue of this action in this judicial district and division is proper under and by virtue of 28 U.S.C. § 1391(b)(2), in that, among other things, a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district and division. Venue also is appropriate in this judicial district and division because Defendants contractually consented to this venue in the Franchise and Trademark Agreement they entered into with Meineke.

9. This Court has *in personam* jurisdiction over Defendants under and by virtue of Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and North Carolina's "long arm" statute, N.C. Gen. Stat. § 1-75.4. Additionally, this Court has personal jurisdiction over Defendants because they consented to such jurisdiction in the Franchise and Trademark Agreement they entered into with Meineke.

## GENERAL ALLEGATIONS
### The Nature of Meineke's Business

10. Meineke grants franchises to qualified persons to establish and operate automotive repair centers under a standard, unique and uniform system developed by Meineke, and grants to those persons the right to use Meineke's federally-registered trade name, logo and other proprietary marks.

### Meineke Trade Name, Logo and Service Marks

11. Meineke is the owner of the trade name "Meineke" and various service marks. The Meineke name and all of its marks and logos are registered with the United States Patent and Trademark Office.

12. The trade name "Meineke" is currently in use, amongst other registrations, under registration numbers 1,241,466; 1,207,490; 1,434,915; 1,610,116; 1,620,331; 2,022,824; 1,191,431; 1,207,483; 1,215,262; 1,268,145; 1,268,264; 2,956,651; and 3,017,566.

13. All of Meineke's proprietary names, logos and marks remain in full force and effect, unrevoked and uncancelled. Meineke has given notice to the public that its name, logo and marks are registered with the United States Patent and Trademark Office by displaying with the name, logo and marks the letter "R" enclosed within a circle.

14. Since July 1972, hundreds of millions of dollars have been spent to advertise the Meineke name, logo and marks.

15. As a result, the Meineke name, logo and marks have become famous, and are strongly associated in the minds of the consuming public throughout the United States and parts of Canada with the products and services offered by Meineke and its franchised chain of independent automotive repair centers.

16. The Meineke name, logo and marks have acquired secondary meaning, enjoy an excellent reputation among the consuming public and constitute property of the greatest value to Meineke.

17. No goods or services bearing the name "Meineke" were manufactured, distributed or sold to the general public prior to the first use by Meineke and its predecessors in interest.

18. More particularly, since July 1972, all goods and services lawfully manufactured, distributed or sold in the United States under the Meineke name, logo and marks have been manufactured, distributed or sold pursuant to licenses granted by Meineke.

19. Each Licensee who so manufactured, distributed or sold such goods and services promised and agreed as a condition of the license to strict control and approval by Meineke over the quality of the goods and services offered by the licensee, as well as the quality of advertising in connection with those goods and services.

## The Franchise Agreement

20. The relationship between Meineke and its franchisees is governed by the terms of the franchise and trademark agreements entered into between them.

21. In approximately November 1998, Meineke entered into a Meineke Franchise and Trademark Agreement with Defendants which granted them the right to operate a Meineke Center located at 1244 Buford Highway, Cumming, Georgia 30041 ("Center No. 1321"). On or about July 10, 2000, Meineke entered into the version of the Franchise and Trademark Agreement that currently governs Defendants' relationship with Meineke for Center No. 1321. A true and correct copy of the governing Franchise Agreement is attached hereto as **Exhibit 1**, and is incorporated by reference as if fully set forth herein.

22. Pursuant to the Franchise Agreement, Defendants became authorized: (i) to operate an automotive repair center under the trade name "Meineke" under the Meineke system; (ii) to display the Meineke name, logo and marks; (iii) to receive training and access to Meineke's methods, procedures and techniques; and (iv) to participate in an established network of licensed automotive repair centers, with a product and service for which Meineke has created substantial demand through the maintenance of the highest quality standards and extensive advertising.

23. In exchange, Defendants agreed, among other things, to: (i) pay Meineke on a weekly basis a franchise fee, or royalty, in an amount equal to seven percent (7%), five percent (5%), four percent (4%), or three percent (3%) of the center's gross revenues depending on the type of product sold or service performed (Exhibit 1 at Article 3.2); (ii) pay Meineke on a weekly basis an advertising contribution in an amount equal to eight percent (8%) of the center's gross revenues for all services except 1.5% of the center's gross revenues for the sale of tires (Exhibit 1 at Article 3.4); and (iii) furnish Meineke with accurate weekly business reports of the center's gross revenues (Exhibit 1 at Article 9.3).

24. Pursuant to Article 17.3 of the Franchise and Trademark Agreement, either party (Meineke, in this case) may obtain preliminary relief in the form of a preliminary injunction of the type sought in this Verified Complaint and Motion, as long as that party contemporaneously files a demand for arbitration of such claim pursuant to Article 17.2 of the Franchise and Trademark Agreement and the final merits of such claim are determined in the arbitration proceedings. Accordingly, contemporaneously with the filing of this Verified Complaint and Motion For a Preliminary Injunction, Meineke has filed a demand for arbitration of the matters stated herein with the American Arbitration Association.

### Defendants' In-Term Covenant Not To Compete

25.	In consideration for becoming Meineke franchisees, Defendants agreed not to operate or be involved in the operation of a competing automotive undercar repair business during their term as Meineke franchisees. The term of Defendants' contract with Meineke is fifteen years, expiring July 10, 2015. (Exhibit 1 at Art. 2.1.) Article 11.2 of the governing Franchise Agreement provides:

> During the Term [of the Franchise Agreement], neither you nor any of your Owners may:
>
> (a)	Directly or indirectly (such as through corporations or other entities owned or controlled by you or your Owners) own any legal or beneficial interest in, manage, operate or consult with: (1) any Competitive Business located anywhere; . . . or
>
> (b)	Divert or attempt to divert any business or customer of any Meineke Shop to any competitor or do anything injurious or prejudicial to the goodwill associated with the Marks or the System.

### Defendants' In-Term Violations

26.	On or about September 7, 2010, Meineke Operations Manager Joe Price learned from the franchisee of another Meineke center that Defendants might have taken down their Meineke signs and might be operating an independent competing business. See Declaration of Joe Price, attached hereto as **Exhibit 2** and incorporated by reference as if fully set forth herein.

27.	On September 11, 2010, Meineke Operations Manager Joe Price visited Center No. 1321 and confirmed that it had removed the Meineke signage and was operating as "Randy's Auto Center," a full service automotive repair center. Operations Manager Price observed Defendant Randy Shaheen operating the competing business. Defendant Marty Shaheen also was on site that day.

28. Meineke confronted Defendants about their in-term violation of their Franchise Agreement. For a period of time, it appeared to Meineke that it would be able to resolve Defendants' in-term violations, but negotiations finally broke down. Defendants continue to violate their in-term non-compete covenant by operating an independent automotive repair business from the same location as their authorized Meineke Center No. 1321.

29. Although Defendants have ceased paying Meineke any royalties or advertising contributions, they continue to receive the benefit of the Meineke telephone number (678) 947-5450 that has been advertised extensively in Yellow Pages advertising with the Meineke name, logo and Marks. The Meineke telephone number (678) 947-5450 still rings to Center No. 1321. See Price Declaration. See also Affidavit of Jeff Story, attached hereto as **Exhibit 3** and incorporated by reference as if fully set forth herein.

### The Irreparable Harm Being Caused to Meineke by Defendants' Violations of the In-Term Covenant not to Compete

30. Defendants were trained in and given access to Meineke's Confidential Information and are likely using the same in the operation of their competing automotive repair business.

31. During their term as franchisees for Center No. 1321, Defendants have obtained and have access to detailed knowledge of the Meineke system including, but not limited to, training manuals, policy manuals, operations manuals, sales promotion aids, business forms, accounting procedures, marketing reports, informational bulletins, product developments, suppliers' discounts, and inventory systems. Meineke has expended considerable time, effort, and resources training Defendants in the operation of their Meineke Center using the Meineke system.

32. In Article 11.1 of their Franchise Agreement, Defendants agreed they would not reveal any proprietary Meineke information, or use such proprietary information in connection with any business or venture in which they have a direct or indirect interest. They further recognized in Article 11.1 that the Meineke system, in its entirety, constitutes proprietary information including, but not limited to, training manuals, policy manuals, operations manuals, sales promotion aides, business forms, accounting procedures, marketing reports, informational bulletins, product development, suppliers' discounts and inventory systems. It is a practical certainty that Defendants are using such information in the conduct of their competing business.

33. When a franchisee is allowed to violate the in-term covenant not to compete, such as Defendants here, the entire Meineke system is severely damaged because other franchisees may believe they also can breach their contracts by opening up competing businesses before the expiration of their Meineke contracts, utilizing the knowledge and training gained in their relationship with Meineke and palming off the goodwill developed as a Meineke center.

34. No amount of money damages alone could compensate Meineke for the loss of valuable goodwill that Meineke has suffered, and will continue to suffer, with its other licensees and with the franchise-buying public in general as a result of Defendants' unauthorized conduct.

35. The harm that would result to Defendants from an Order of this Court directing them to cease the above-described breaches of the in-term provision of their Franchise Agreement and to cease engaging in the above-described acts of unfair competition is not sufficient to justify permitting them to continue to irreparably harm the rights and interests of

Meineke and its other franchisees.

### The Irreparable Harm Being Caused To Meineke
### By Defendants' Infringement Upon The Meineke Marks

36. Defendants' on-going use of the Meineke telephone number, which has been advertised extensively with the Meineke name, logo and Marks, is likely to cause confusion among the consuming public as to the source of origin of the goods and services offered by Defendants' center and a loss of valuable goodwill to Meineke.

37. During the term of their Franchise Agreement, Meineke has actively promoted and advertised the telephone number (678) 947-5450 in connection with Defendants' Meineke Center. This listing has been placed by Meineke in Yellow Pages advertisements. See Story Affidavit.

38. Although Defendants are now holding themselves out as "Randy's Auto Center, " they continue to utilize the Meineke telephone number in the conduct of their business. See Price Declaration.

39. Because Defendants continue to utilize the Meineke name, logo, and marks and operate from the exact same location as is listed in the Yellow Pages, it is likely that customers will blame Meineke for any problems that they experience as a result of Defendants' work on their automobiles, even though Meineke, in fact, has no control whatsoever over the quality of the products or services now being sold by Defendants to such customers.

40. In addition, because Defendants continue to utilize the telephone number associated with Center No. 1321, it is likely that customers will look to Meineke under what they believe is Meineke's warranty for any poor work performed by Defendants' competitive business on their automobiles, and for any damage done to their automobiles by Defendants'

competitive business, despite the fact that Meineke has no control whatsoever over the quality of the products or services now being sold by Defendants' center to such customers.

41. Because Defendants are now operating an independent business and have chosen to no longer be subject to Meineke's uniform procedures, techniques and quality control standards, and because they are operating what could appear to be an authorized Meineke franchise, Meineke will suffer a loss of goodwill with customers in the Cumming and Atlanta, Georgia area who are being, or have been, or may be victimized by Defendants' business practices.

42. It is likely that it will be impossible, as a practical matter, for Meineke to re-establish its former good reputation with lost customers who have been victimized by Defendants once those customers have switched to other automobile repair facilities.

43. In addition to the irreparable harm now being caused to Meineke by Defendants' wrongful conduct, Meineke owes a duty to over 800 franchises throughout the United States and parts of Canada to protect them from this public deception and unfair competition by franchisees who continue to use the Meineke trade name, logo, and marks without paying for that valuable privilege.

44. No amount of money damages alone could compensate Meineke for the loss of valuable goodwill that Meineke has suffered, and will continue to suffer, with its innocent franchisees and with the franchise-buying public in general as a result of Defendants' deception and unfair competition.

45. The harm that would result to Defendants from an Order of this Court directing Defendants to cease the above-described breaches of the in-term provisions of the Franchise Agreement, to cease infringing Meineke's name, logo and marks, and to cease using

Meineke's telephone number, is not sufficient to justify permitting Defendants to continue to deceive and confuse the consuming public generally, and to irreparably harm the resale rights and interests of Meineke and its other franchisees.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

46. Meineke repeats and re-alleges Paragraphs 1 through 45 above, which are incorporated by reference herein.

47. Meineke has performed all of the obligations required of it under the Franchise Agreement.

48. Despite Meineke's performance, Defendants have breached their obligations and promises under the Franchise Agreement by operating a competing business from the location of their authorized Meineke Center No. 1321 when more than four years remain on their contract with Meineke.

49. Meineke is entitled to a Preliminary Injunction directing Defendants to cease and refrain from, directly or indirectly (such as through corporations or other entities owned or controlled by them) owning any legal or beneficial interest in, managing, operating or consulting with any Competitive Business located anywhere during the remaining term of Defendants' Franchise Agreement with Meineke to operate Center No. 1321.

50. Meineke also is entitled to a Preliminary Injunction directing Defendants to cease and refrain from diverting or attempting to divert any business or customer of any Meineke Center to its competitive business or do anything injurious or prejudicial to the goodwill associated with the Meineke Marks or the Meineke System.

11

51.     In addition, Defendants' conduct has damaged Meineke and is continuing to damage Meineke by impairing the value of Meineke's asset, which is its contract with Defendants, in an amount in excess of $75,000.

## SECOND CLAIM FOR RELIEF
**(Trade Mark Infringement)**

52.     Meineke repeats and re-alleges herein paragraphs 1 through 51 above, which are incorporated by reference herein.

53.     Since Defendants have been operating their competing business, they have deliberately and intentionally used Meineke's federally registered name, logo and marks in interstate commerce without paying for the right to do so by continuing to use the Meineke telephone number associated in Yellow Pages advertising with the Meineke name, logo and marks.

54.     The nature and extent of Defendants' wrongful and unauthorized use of Meineke's trade name, logo, and marks is such that Defendants' conduct is likely to cause actual confusion, mistake and deception among the consuming public.

55.     Defendants' unauthorized use of Meineke's federally registered trade name, logo, and marks constitutes trademark infringement in violation of, among other things, 15 U.S.C. §1114.

56.     As a direct and proximate result of Defendants' acts of trademark infringement, Meineke has suffered actual pecuniary losses.

57.     In addition, unless Defendants are restrained and enjoined from continuing to infringe Meineke's federally registered name, logo, and marks, Defendants' unlawful conduct will seriously erode and damage Meineke's valuable goodwill, commercial reputation, name, logo and marks, and will continue to cause confusion, mistake and deception among the

consuming public, including particularly those persons seeking authorized Meineke products and services, thus causing Meineke to suffer irreparable harm, for which there is no fully adequate legal remedy.

58. By reason of the foregoing, Meineke is entitled to a Preliminary Injunction against Defendants, restraining and enjoining them from any further use of Meineke's telephone number and listings.

59. More particularly, in accordance with 15 U.S.C. §§ 1116 and 1118, Meineke is entitled to a Preliminary Injunction directing Defendants to: (a) cease using the telephone number (678) 947-5450 now being used by Defendants' independent business located at 1244 Buford Highway, Cumming, Georgia 30041 that has been advertised extensively in conjunction with Meineke's name, logo and Marks and, (b) if necessary, do everything required by the telephone company to release or transfer control of the telephone number to Meineke.

60. In addition to the injunctive relief prayed for in the preceding paragraph, Meineke is entitled to a judgment against Defendants, pursuant to 15 U.S.C. § 1117(a) and (b), in the amount of Defendants' profits and/or Meineke's damages, since Defendants began operating their competing business.

61. In accordance with 15 U.S.C. § 1117(a), the amount of Defendants' profits is measured by Defendants' total sales since they began operating their competing business.

62. Accordingly, by reason of Defendants' acts of trade mark infringement, Meineke is seeking a judgment against Defendants, pursuant to 15 U.S.C. § 1117(a) and (b), in an amount to be determined at arbitration, plus the costs of this action, as authorized by 15 U.S.C. § 1117(a) and (b).

63.     In addition, pursuant to 15 U.S.C. § 1117(b), given that Defendants' conduct in violation of 15 U.S.C. § 1114(1)(a) constitutes the repeated and intentional use by Defendants of one or more marks or designations, knowing that such marks or designations are counterfeit marks, Meineke is seeking a judgment trebling the amount of profits which it is entitled to recover from Defendants.

SECOND CLAIM FOR RELIEF
**(Attorneys' Fees)**

64.     Meineke repeats and realleges Paragraphs 1 through 63 above, which are incorporated by reference herein.

65.     Article 17.6 of the Franchise Agreement provides:

> "The Party who prevails in any arbitration or judicial proceeding will be awarded its costs and expenses incurred in connection with such proceedings, including reasonable attorneys' fees."

66.     In accordance with the provisions of Article 17.6 of the Franchise Agreement, Meineke is entitled to recover its costs and expenses, to include its reasonable attorneys' fees, in the event it prevails in this proceeding.

WHEREFORE, Meineke Car Care Centers, Inc. respectfully prays that the Court:

1.      Enter a Preliminary Injunction against Defendants in accordance with Meineke's First Claim for Relief, directing Defendants, their agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of said Preliminary Injunction, by personal service or otherwise, to cease and refrain from, for the remaining term of the Franchise Agreement for Center No. 1321 which is until July 10, 2015, directly or indirectly (such as through corporations or other entities owned or controlled by them) owning any legal or beneficial interest in, managing, operating or consulting with any Competitive Business located anywhere.

2. Enter a Preliminary Injunction against Defendants in accordance with Meineke's First Claim for Relief, directing Defendants, their agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of said Preliminary Injunction, by personal service or otherwise, to cease and refrain from diverting or attempting to divert any business or customer of any Meineke Center to their competitive business or do anything injurious or prejudicial to the goodwill associated with the Meineke Marks or the Meineke System.

3. Enter a Preliminary Injunction against Defendants in accordance with Meineke's Second Claim for Relief, directing Defendants to: (a) cease using the telephone number (678) 947-5450 now being used by Defendants' independent business located at 1244 Buford Highway, Cumming, Georgia 30041 that has been advertised extensively in conjunction with Meineke's name, logo and Marks and, (b) if necessary, do everything required by the telephone company to release or transfer control of the telephone number to Meineke.

4. Confirm any judgment, order, award and/or permanent relief granted by the arbitrator in the arbitration that Meineke is contemporaneously filing with this motion for injunctive relief.

5. Award Meineke such other and further relief as the Court may deem just and proper.

6. Meineke further tenders to and respectfully prays that the Court treat this Verified Complaint and the Exhibits attached to it as an Affidavit in support of Meineke's Motion for a Preliminary Injunction.

This the 11th day of November 2010.

s/ Amy K. Reynolds
N.C. State Bar No. 21266
Attorney for Plaintiff
Meineke Car Care Centers, Inc.
128 South Tryon Street, Suite 900
Charlotte, NC 28202
Telephone: (704) 644-8144
Fax: (704) 358-4706
E-mail: amy.reynolds@drivenbrands.com

## VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

MICHAEL CARLET, being first duly sworn, deposes and says that he is the Chief Financial Officer of Meineke Car Care Centers, Inc. (hereinafter referred to as "Meineke"); that, as such, he is authorized to make this oath and verification; that, in his capacity as the Chief Financial Officer of Meineke, he is a custodian for all of the books and records of Meineke, and is familiar with those books and records; that, in his capacity as the Chief Financial Officer of Meineke, he is familiar with Meineke's business operations, including its business dealings and its relationship with its franchisees generally and with Defendants in particular; that he has read the foregoing Verified Complaint and Motion for a Preliminary Injunction; that he knows the contents thereof to be true of his own personal knowledge, except for those allegations made in the Verified Complaint upon information and belief, and except for those allegations contained in the Verified Complaint that are verified by the Declaration of Joe Price and the Affidavit of Jeff Story (which are attached as exhibits to the Verified Complaint); and that, as to the allegations contained in the Verified Complaint which are made upon information and belief, he believes them to be true.

Dated this the 11th day of November 2010.

_____
Michael Carlet

Sworn to (or affirmed) and subscribed to before me this day by Michael Carlet.

Date: November 11, 2010           _____
                                  Cindi Hodges, Notary Public

My Commission Expires: November 30, 2011